UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
PAN AMERICAN WORLD AIRWAYS, INC.        :

                                              Plaintiff,        :        08-CIV-_____

      -against-                                                        :

VETEMENTS, INC. and KINSER CHIU,            :

                                              Defendants.    :
------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

Table of Contents

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT ........................................................................................................................... 3

I.    LEGAL STANDARD FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER ............................................................................................... 4

II.   THE PAN AM MARKS MERIT PROTECTION ........................................................ 6

III.  VETEMENTS' AND CHIU'S USE OF THE PAN AM MARKS CREATES A LIKELIHOOD OF CONSUMER CONFUSION ......................................................... 9

    A.   The *Polaroid* Factors ......................................................................................... 9

        1.   The Strength of the Pan Am Marks ...................................................... 9

        2.   The Degree of Similarity Between the Marks ................................... 10

        3.   Competitive Proximity of the Product ............................................... 10

        4.   Likelihood that the Senior User Will Bridge the Gap ....................... 10

        5.   Evidence of Actual Confusion ............................................................ 11

        6.   Defendant's Bad Faith ......................................................................... 12

        7.   Quality of Defendant's Product ........................................................... 12

        8.   Sophistication of the Relevant Group ................................................. 13

    B.   Analyzing the *Polaroid* Factors ..................................................................... 13

IV.  PAN AM HAS SUFFERED AND CONTINUES TO SUFFER IRREPARABLE HARM ............................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Home Prods. v. Johnson Chem. Co.*,
  589 F.2d 103 (2d Cir. 1978) ............................................................................................. 10

*Bridges Network, Inc. v. Rafiq*,
  No. 06-CV-0031, 2006 WL 145912 (W.D.N.Y. Jan. 19, 2006) ........................................ 5

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*,
  973 F.2d 1033 (2d Cir. 1992) ......................................................................................... 4-5

*Brunckhorst Co. v. G. Heileman Brewing Co. Inc.*,
  875 F. Supp. 966, 975 (E.D.N.Y. 1994) .................................................................. 6, 8, 11

*By Design, PLC v. Ben Elias Indus., Corp.*,
  No. 98 Civ. 4588, 1998 U.S. Dist. LEXIS 22992 (S.D.N.Y. Oct. 2, 1998) ..................... 14

*Centaur Commc'ns Ltd. v. A/S/M Commc'ns Inc*,
  830 F.2d 1217, 1228 (2d Cir. 1987) .......................................................................... 11, 12

*Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*,
  794 F.2d 38 (2d Cir. 1986) ........................................................................................... 6, 14

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*,
  604 F.2d 200 (2d Cir. 1979) ......................................................................................... 8, 13

*Daussa Corp. v. Sutton Cosmetics (P.R.) Inc.*,
  462 F.2d 134 (2d Cir. 1972) (Friendly, J.) ......................................................................... 5

*Educ. Testing Serv. v. Touchstone Applied Sci. Assoc., Inc.*,
  739 F. Supp. 847 (S.D.N.Y. 1990) ............................................................................ 10, 12

*El Greco Leather Prods. Co., Inc. v. Shoe World, Inc.*,
  806 F.2d 392 (2d Cir. 1986) ........................................................................................ 13, 14

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
  286 F. Supp. 2d 284 (S.D.N.Y. 2003) ......................................................................... 13-14

*Italverde Trading Inc. v. Four Bills of Lading*,
  485 F. Supp. 2d 187 (E.D.N.Y. 2007) .............................................................................. 14

*Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Kun Fung USA Trading*,
  No. 07-CV-2568, 2007 U.S. Dist. LEXIS 57224 ....................................................... 13, 14

*Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*,
   426 F.3d 532, 537 (2d Cir. 2005) .................................................................................5

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*,
   818 F.2d 254 (2d Cir. 1987) ..........................................................................................8

*Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*,
   182 F.3d 133 (2d Cir. 1999) ..........................................................................10, 12, 13

*Pan American World Airways, Inc. v. Flight 001, Inc.*,
   No 06 Civ. 14442, 2007 WL 2040588 (S.D.N.Y. July 13, 2007) ..............................7, 9

*Polaroid Corp. v. Polarad Elecs. Corp.*,
   287 F.2d 492 (2d Cir. 1961) .....................................................................................9, 13

*Romag Fasteners, Inc. v. J.C. Penny, Inc.*,
   No. 07-CV-1667, 2007 WL 4225792 (D. Conn. 2007) ................................................4

*Ryan v. Volpone Stamp Co., Inc.*,
   107 F. Supp. 2d 369 (S.D.N.Y. 2000) ........................................................................5-6

*Scarves By Vera, Inc. v. Todo Imps. Ltd.*,
   544 F.2d 1167 (2d Cir. 1976) ...............................................................................6, 8, 11

*Tanning Research Labs., Inc. v. Worldwide Imp. & Exp. Corp.*,
   803 F. Supp. 606 (E.D.N.Y. 1992) ..............................................................................14

*The Southland Corp. v. Froelich*,
   41 F. Supp. 2d 227 (E.D.N.Y. 1999) ..........................................................................5-6

*Towers Fin. Corp. v. Dun & Bradstreet, Inc.*,
   803 F. Supp. 820 (S.D.N.Y. 1992) ................................................................................5

*Virgin Enters. Ltd. v. Nawab*,
   335 F.3d 141 (2d. Cir. 2003) ................................................................................passim

*Vuitton et Fils, S.A. v. Crown Handbags*,
   492 F. Supp. 1071 (S.D.N.Y. 1979) ............................................................................12

**STATUTES**

15 U.S.C. § 1114 ...................................................................................................................5

15 U.S.C. § 1125(a)(1) .........................................................................................................5

## PRELIMINARY STATEMENT

Plaintiff Pan American World Airways, Inc. ("Pan Am") submits this Memorandum of Law in Support of Its Motion for a Preliminary Injunction and Temporary Restraining Order to enjoin the sale of products bearing Pan Am's trademarks by defendants Vetements, Inc. ("Vetements") and Kinser Chiu ("Chiu"), a principal of Vetements.

Pan Am seeks a preliminary injunction to stop this blatant case of trademark infringement. Neither Vetements nor Chiu was ever authorized to sell Pan Am merchandise. Vetements had a limited authorization to manufacture Pan Am merchandise for Pan Am's licensee, Machine Project Inc. ("Machine Project"), but Vetements never had the right to sell those products under any circumstances. After Pan Am properly terminated its license agreement with Machine Project in March 2008, Machine Project stopped selling the Pan Am merchandise.

But this rogue manufacturer has refused to similarly comply with the law. Vetements has exceeded the limited authority it ever had and has decided to sell goods bearing Pan Am's trademarks in retail stores and on the internet under the name "Pan Am for Vetements." Not only is this a clear trademark violation in and of itself, but Vetements' designation of the products' origin, "Pan Am for Vetements," causes consumer confusion as to Pan Am's sponsorship of such sales.

The law in this Circuit for such a case is clear. Selling products bearing a trademark owner's mark without authorization to do so is a violation of the Lanham Act and is sufficient grounds for the Court to issue swift injunctive relief.

## STATEMENT OF FACTS

A complete recitation of the facts is set forth in the accompanying declaration of Robert B. Culliford to which the Court is respectfully referred. They are briefly summarized here as follows:

Pan Am is the registered owner of the PAN AM word mark, Pan Am Globe Design, and PAN AMERICAN WORLD AIRWAYS word mark (collectively, the "Pan Am Marks"). (Culliford Decl. ¶¶ 5-10.) As explained in detail in the Culliford Declaration, Pan Am acquired all of the rights to the Pan Am Marks following the bankruptcy of Pan American World Airways, Inc. in the 1990s. *Id.* ¶ 39.

The Pan Am Marks have been in continuous use for decades. For example, The PAN AM mark has been in continuous use since the early 1930s, and the Pan Am Globe Design has been in use since the 1950s. *Id.* ¶¶ 40-41. Until recently, Pan Am provided airline services between several cities on the East Coast of the United States, as well as rail freight services. *Id* ¶ 3. Pan Am also sells retail merchandise bearing its logo, including, model airplanes and travel-related products, and licenses others to do so. *Id.* ¶¶ 61-64, 67.

As part of its effort to expand into the retail sector and promote its brand, Pan Am entered into a Merchandising License Agreement ("MLA") dated as of January 1, 2007 with Machine Project which gave Machine Project certain limited rights to sell products bearing the Pan Am Marks. *Id.* ¶¶12-14. The MLA gave Pan Am the absolute unconditional right to terminate the MLA and all of Machine Project's rights thereunder, which Pan Am did on March 14, 2008, due to Machine Project's various breaches of the MLA. *Id.* ¶¶ 15, 19-22. These breaches include Machine Project's failure to meet certain Minimum Performance Requirements, make required

royalty payments, and present certain merchandise for approval by Pan Am. *See id.* The termination became effective on April 13, 2008.

Vetements is a New York corporation. Upon information and belief Vetements is operated by Kinser Chiu and owned by his wife, Suk Fun Lau. While the MLA was in force, Machine Project authorized Vetements to manufacture certain merchandise such as luggage, coin purses, passport covers, and stationery bearing the Pan Am Marks. Vetements was never a licensee or sub-licensee of Pan Am. Machine Project did not, nor could it without Pan Am's approval (which was never sought or given), grant Vetements a sub-license to sell or distribute merchandise bearing Pan Am's marks. *See id.* ¶ 13. Thus, Vetements never had the right to sell or distribute merchandise bearing the marks. Moreover, any rights that Vetements did have to manufacture the merchandise were derivative of Machine Project's rights, and as such, were terminated when Pan Am terminated the MLA.

After Pan Am terminated the MLA, Machine Project stopped selling the merchandise bearing the marks. *See id.* ¶ 23.

On April 10, 2008, Pan Am informed Chiu, through his counsel, that Pan Am was aware that Chiu was in possession of Pan Am merchandise and that Chiu was not licensed to sell it. *See id.* ¶ 25. Pan Am requested that Chiu sell this merchandise to Pan Am at fair market value and informed Chiu that Pan Am would seek all appropriate remedies to prevent an unauthorized sale if Chiu or his company, Vetements, attempted to sell the merchandise to anyone else. *See id.* Chiu rebuffed Pan Am's offer to purchase the goods with the Pan Am Marks that already had been manufactured. Pan Am has been informed that Chiu and Vetements continue to manufacture additional merchandise, without any colorable right to do so. *See id.* ¶ 36. What is more, Chiu and Vetements are currently selling the Pan Am merchandise on Barnes & Noble's

3

website and in Barnes & Noble stores, even though the MLA has been terminated and they never had the right to sell the merchandise in the first place. *See id.* ¶¶ 29-35.

Specifically, Vetements is selling a "Pan Am Vintage Postcard Collection," a passport cover, an "AIRMail" stationary set, a travel journal, a flight bag, and key chain. All of these items bear at least one of the Pan Am Marks. *See id.* Upon information and belief, some of this merchandise was manufactured after the termination of the MLA. Moreover, Vetements advertises some of these products on Barnes & Noble's website as produced by "Pan Am for Vetements," misrepresenting the true origin of these goods. *See id.* ¶¶ 30-33.

Pan Am now seeks a preliminary injunction and temporary restraining order to stop this clear trademark violation.[1]

ARGUMENT

I. **LEGAL STANDARD FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

A party seeking a preliminary injunction must show (1) a probability of irreparable harm in the absence of injunctive relief and (2) either (a) a likelihood of success on the merits or (b) a serious question on the merits and the balance of the equities are in the movant's favor. *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 145 (2d. Cir. 2003). In a Lanham Act case like this one, this standard applies to a motion for a temporary restraining order. *See Romag Fasteners, Inc. v. J.C. Penny, Inc.*, No. 07-CV-1667, 2007 WL 4225792, at *3 (D. Conn. 2007) (citing *Bristol-*

---

[1] On, May 14, 2008 Kinser Chiu initiated a lawsuit against Anthony Lukas, Pan American World Airways, Inc., and Pan Am Systems, Inc. in the Supreme Court of the State of New York, alleging breach of Machine Project Inc.'s contract with Pan American World Airways, Inc., among other claims. The lawsuit was purportedly filed on behalf of Machine Project Inc., although there is no indication that the attorney of record in that case was authorized to act on behalf of Machine Project, Inc. Chiu is not an officer, director or shareholder of Machine Project, yet he instructed his attorney to file suit on Machine Project's behalf. Even more egregious, Chiu also named Anthony Lukas as a defendant in the action, which was removed to this Court, and his attorney purports to represent Machine Project in the suit against Lukas. Lukas, however, is the President, sole shareholder, and along with his wife, one of the two directors of Machine Project. Lukas never authorized Chiu's attorney to have his company sue him. Interestingly, Chiu does not claim that Vetements has ever had any rights in the contract at issue, but rather claims that he is a part "equitable" owner of Machine Project, Inc.

*Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1038 (2d Cir. 1992); *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005)); *Towers Fin. Corp. v. Dun & Bradstreet, Inc.*, 803 F. Supp. 820, 822 (S.D.N.Y. 1992).

The Lanham Act prohibits any person from using in commerce "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . which . . . is likely to cause confusion, or to cause mistake or to deceive as to the . . . connection . . . of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, [or] services." 15 U.S.C. § 1125(a)(1). Also prohibited is the use in commerce, without the consent of the registrant, of any "reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . " *Id.* §114(1)(a).

To prove a claim of trademark infringement under the Lanham Act, plaintiff must establish (1) that the mark in question merits protection; and (2) a likelihood of consumer confusion. *Daussa Corp. v. Sutton Cosmetics (P.R.) Inc.*, 462 F.2d 134, 136 (2d Cir. 1972) (Friendly, J.).

Moreover, in a trademark infringement action, where a mark merits protection, both elements of a preliminary injunction are satisfied by showing that a significant number of consumers are likely to be confused about the source of the goods identified by the allegedly infringing mark. *See Virgin Enters. Ltd.*, 335 F.3d at 146 (reversing district court's denial of preliminary injunction). Courts in the Second Circuit routinely grant preliminary injunctions and temporary restraining orders where a trademark is infringed. *See, e.g.,. Bridges Network, Inc. v. Rafiq*, No. 06-CV-0031, 2006 WL 145912, at *2 (W.D.N.Y. Jan. 19, 2006); *Ryan v. Volpone*

*Stamp Co., Inc.*, 107 F. Supp. 2d 369, (S.D.N.Y. 2000); *The Southland Corp. v. Froelich*, 41 F. Supp. 2d 227, 249 (E.D.N.Y. 1999). As shown below, this is a clear case of trademark infringement.

## II.     THE PAN AM MARKS MERIT PROTECTION

A mark is presumed to merit protection when the plaintiff has a valid, registered trademark. *See Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 42 (2d Cir. 1986) (enjoining former licensee for infringement and holding that federal registration created a strong presumption of the marks' validity). In conducting this inquiry, courts look to whether the mark is valid and registered for use with any good or service. *See e.g. Brunckhorst Co. v. G. Heileman Brewing Co. Inc.*, 875 F. Supp. 966, 975 (E.D.N.Y. 1994) (finding that mark registered for use with deli meat and cheese merits protection in infringement action against use of similar mark on beer). Plaintiff need not show that the mark has been registered for use with the precise good or service in which the alleged infringer traffics in order to merit protection under the Lanham Act. *See Virgin Ents. Ltd.*, 335 F.3d at 143-45 (finding that mark registered for use on airplanes, music stores and other goods and services merits protection in infringement action against use of mark on wireless phones and phone services, even without registration for same); *Scarves By Vera, Inc. v. Todo Imps. Ltd.*, 544 F.2d 1167, 1174-75 (2d Cir. 1976) (finding that mark registered for use on clothing merits protection in infringement action against use of identical mark on cosmetics and fragrances). At this stage of the analysis, all that is required is that the plaintiff demonstrate that it has a registered or otherwise valid trademark. *Virgin Ents. Ltd.*, 335 F.3d at 143-45.

Here, Pan Am holds a federal registration for each of the marks at issue for use in a variety of goods and services. First, Pan Am has registered the Pan Am Globe Design for use in

a number of goods and services, including transporting freight and passengers by air; luggage; all-purpose carrying bags; carry-all bags; carry-on bags; travel bags; toy model vehicles, airplanes, trains, train cars; scale model vehicles, trains, train cars, and airplanes; transportation by rail; freight transportation; rental leasing and chartering of vehicles; rental, leasing and chartering vehicles and apparatus for locomotion by rail. *See* Culliford Decl. ¶6.

The PAN AM word mark is registered for use on transportation by rail; freight transportation; rental, leasing and chartering of vehicles; and rental, leasing and chartering vehicles and apparatus for locomotion by rail. *Id.*

The PAN AMERICAN WORLD AIRWAYS mark is registered for use with clothing, namely, hats, bandanas, scarves, t-shirts, long sleeve shirts, short sleeve shirts, jackets, sweaters, dresses, short pants, long pants, swim suits, underwear, pajamas, socks and shoes. *Id.*

Thus, there can be no dispute that Pan Am holds valid registrations for each of the Pan Am Marks. *See id.* ¶¶ 4-7. Indeed, a court in this district recently held that Pan Am currently owns these original Pan Am trademarks. *See Pan American World Airways, Inc. v. Flight 001, Inc.*, No 06 Civ. 14442, 2007 WL 2040588, at *8-10 (S.D.N.Y. July 13, 2007) (describing history and chain of title of the Pan Am Marks). Therefore, the Pan Am Marks clearly merit protection. *See Virgin Ents. Ltd.*, 335 F.3d at 143-45.

In addition to the registered marks, Pan Am has an application pending with the United States Patent and Trademark Office ("PTO") to register the Pan Am Globe Design for use on pens, pencils, writing utensils, calendars, posters, blank cards, greeting cards, note cards luggage tags, non-motorized collapsible luggage carts, purses, mugs and cups, shirts, headwear, jackets, sweatshirts, sweat pants, pants, gloves, and socks. *See* Culliford Decl. ¶¶ 8-9.

The owner of a valid, registered mark is entitled to protection from infringement by goods bearing its mark even if these types of goods are not explicitly covered by its registration. Directly on point is *Virgin Ents. Ltd.*, 335 F.3d 141. There, plaintiff trademark owner sued defendant for trademark infringement arising out of the defendant's use of plaintiff's mark on wireless phones and wireless phone services. *Virgin Ents. Ltd.*, 335 F.3d at 146. Plaintiff's registrations for the VIRGIN mark covered its use in "retail store services in the fields of . . . computers and electronic apparatus," but not telecommunications services and wireless phones. *Id.* at 143-44. Plaintiff had used the VIRGIN mark in connection with an airline, record stores, and other goods and services. *Id.* at 146. Plaintiff then began to license its name to an unrelated wireless phone provider and filed an intent-to-use application with the PTO for use of the mark with wireless phones and phone services, but the application was denied because such mark was already reserved, "presumably by defendants." *Id.* at 144. When Virgin learned that defendant was selling wireless phones and phone service under the name Virgin Wireless, it sought, and was granted an injunction. *Id.* at 144-45, 152. The Second Circuit held that there was no doubt that the VIRGIN mark merited protection due to Virgin's ownership, registration and prior use of the mark even though Plaintiff had not registered for or previously used the mark with wireless phone services or wireless phones. *See id.* at 146; *see also Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987); *Scarves By Vera, Inc.*, 544 F.2d at 1174-75; *Brunckhorst*, 875 F. Supp. at 975.

Here, Pan Am has valid, federally registered trademarks, and it seeks to enjoin the distribution of note cards, post cards, etc. bearing those marks. Just as in *Virgin*, Pan Am's marks merit protection against infringement by those goods, even though Pan Am's registrations do not yet cover those classes of goods. *See id.* at 143, 150-51. In other words, as the Second

Circuit found in *Virgin*, the fact that Pan Am has valid, registered marks for the goods and services listed in the registrations is sufficient in and of itself to demonstrate that its marks merit protection against Defendants' infringing goods. *Id.* at 145. Moreover, some of the goods that Vetements is distributing are covered by Pan Am's registration, i.e., luggage.

### III. VETEMENTS' AND CHIU'S USE OF THE PAN AM MARKS CREATES A LIKELIHOOD OF CONSUMER CONFUSION

In addressing the likelihood of confusion, courts in the Second Circuit follow the factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). These factors include the: 1) strength of the senior user's mark; 2) degree of similarity between the marks; 3) competitive proximity of the products; 4) likelihood that the senior user will bridge the gap; 5) evidence of actual confusion; 6) defendant's bad faith; 7) quality of defendant's product; and 8) sophistication of the relevant group. *Polaroid Corp.*, 287 F.2d at 495. As shown below, these factors weigh overwhelmingly in favor of finding a likelihood of confusion.

#### A. The *Polaroid* Factors

##### 1. The Strength of the Pan Am Marks

Each of the Pan Am Marks is extremely well-known in the marketplace. Indeed, as explained in detail in the Culliford Decl. at paragraphs 40 through 59, the PAN AM word mark and Pan Am Globe Design are famous cultural icons. In fact, Judge Haight in this District recently found that the Pan Am Globe Design "is very famous, having acquired worldwide recognition due to prominent use in marketing by the original Pan Am." *Pan Am World Airways, Inc.*, No. 06 Civ. 14442, 2007 WL 2040588, at *12 (holding that this factor weighed in favor of Pan Am). Moreover, the marks are the subject of federal trademark registrations, which, in addition to creating a strong presumption of validity, stands as proof of the strength of the

marks. *Am. Home Prods. v. Johnson Chem. Co.*, 589 F.2d 103, 106 (2d Cir. 1978) (reversing denial of preliminary injunction).

### 2. The Degree of Similarity Between the Marks

Where the secondary user's mark is identical to the plaintiff's mark, it necessarily follows that the mark will increase a likelihood of confusion, and thus this factor weighs in favor of the plaintiff. *See Virgin Ents.*, 335 F.3d at 149. Here, the marks used by Vetements are identical to Pan Am's registered marks. Indeed, the types of products at issue were at least initially manufactured under license by Pan Am, through Vetements' contract to manufacture for Machine Project.

### 3. Competitive Proximity of the Product

The third *Polaroid* factor addresses whether and to what extent the products compete with each other. *Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 140 (2d Cir. 1999). The competition need not be direct, as long as the products are closely related. *See Scarves By Vera, Inc.*, 544 F.2d at 1174-75 (holding that owner of mark for use on clothing was entitled to protection from the use of that mark on cosmetics and fragrances). In this case, the Vetements merchandise has a travel theme – e.g., travel bags, postcards, travel journals, passport covers, etc. So even if it is not directly competing with Pan Am's registered goods and services, the infringing goods are certainly in the travel field, which is the very same market in which the Pan Am Marks are registered and used.

### 4. Likelihood that the Senior User Will Bridge the Gap

The fourth factor, the likelihood that the senior user will bridge the gap, recognizes the "'senior user's interest in preserving avenues of expansion and entering into related fields." *Educ. Testing Serv. v. Touchstone Applied Sci. Assoc., Inc.*, 739 F. Supp. 847, 852 (S.D.N.Y. 1990)

(quoting *Centaur Commc'ns Ltd. v. A/S/M Commc'ns Inc.*, 830 F.2d 1217, 1228 (2d Cir. 1987)). Thus, where the proximity of the markets the parties operate in is not close, courts consider "'whether the senior user of the mark is likely to enter the market in which the junior user is operating." *Id.*

Pan Am has licensed the Pan Am Globe Design, PAN AM word mark, PAN AMERICAN WORLD AIRWAYS mark, and Pan Am Winged Design for use on items identical to the items that Vetements is now selling. Pan Am need not actually sell the goods for purposes of this factor, licensing of their marks is considered sufficient. *Brunckhorst*, 875 F. Supp. at 980 (holding that evidence that plaintiff had expressed interest in entering into a licensing arrangement was bridging the gap). But for Vetments' refusal to release the goods to Pan Am or Machine Project, Pan Am would likely be selling these products in the market now. Moreover, Pan Am has a licensee that uses the PAN AM word mark and Pan Am Globe Design in connection with a retail store that sells travel-related products. Pan Am also has plans to expand its retail services, including operating a Pan Am store that would sell Pan Am merchandise and other travel-related items. To further these plans, Pan Am has an application pending to register the Pan Am Globe Design for use on additional travel-related accessories.

### 5. Evidence of Actual Confusion

Under this factor, a trademark owner is not required to prove actual confusion, rather, it need only show that confusion is likely. *See Scarves By Vera,* 544 F.2d at 1174-75 (holding that plaintiffs established a likelihood of confusion notwithstanding their failure to show actual confusion where the marks were very similar).

Pan Am only recently became aware of Vetements' conduct, and thus has not yet had the opportunity to uncover all of the evidence of actual confusion. However, because Vetements is

selling these goods as "Pan Am for Vetements" and the goods are identical to goods that Pan Am already licensed to sell, confusion is inevitable.

### 6.   Defendant's Bad Faith

In the Second Circuit, "actual knowledge of the senior user's trademark can give rise to an inference of bad faith." *Educ. Testing*, 739 F. Supp. at 852 (citing *Centaur Commc'ns Ltd.*, 830 F.2d at 1228 *superseded on other grounds*). Moreover, "the second comer . . . has a duty to so name and dress his product as to avoid all likelihood of consumers confusing it with the first comer." *Vuitton et Fils, S.A. v. Crown Handbags*, 492 F. Supp. 1071, 1075 (S.D.N.Y. 1979).

It is abundantly clear that Chiu was aware of Pan Am's use of the mark as Chiu's company, Vetements, had begun to fill orders for goods ordered by Pan Am's licensee. Moreover, by selling these goods as "Pan Am for Vetements," Vetements is avoiding its duty to name and dress its product in a manner that avoids confusion with Pan Am.

### 7.   Quality of Defendant's Product

"Products of equal quality may tend to create confusion as to source because of [the] similarity of quality." *Morningside Group Ltd.*, 182 F.3d at 142. Here, the products were designed to be of generally equal quality. The products were designed to be sold by Pan Am and meet Pan Am's high quality control standards. Due to Machine Project's breaches of the MLA, Pan Am did not have the opportunity to inspect the quality of the goods, but the good were at least designed to be of equal quality as a Pan Am product. To the extent that the goods do not meet Pan Am's quality control standards, this factor would also weigh in favor of Pan Am, as the marketing of goods of inferior quality can create confusion by tarnishing a plaintiff's reputation among consumers. *See id.*

### 8. Sophistication of the Relevant Group

Where the marks are identical and the products are of the same type "the sophistication of the buyers cannot be relied on to prevent confusion." *Id.* at 143. Here, Vetements is selling goods that bear marks identical to the Pan Am Marks and that are identical to goods Pan Am licensed for manufacture and sale. Likelihood of confusion is inevitable under this factor.

### B. Analyzing the *Polaroid* Factors

Taking into account all of the factors, there is a compelling likelihood of confusion here: Pan Am's marks are undeniably strong and defendants are using the identical marks, in the same general market for travel goods and services, in which Pan Am is continuing to participate by selling its services and merchandise. On top of this clear showing, Vetements and Chiu are acting in bad faith, with complete knowledge of Pan Am's Marks and rights to them.

Moreover, courts have held that an unauthorized sale of goods bearing an owner's trademark is sufficient to demonstrate a likelihood of confusion. *See El Greco Leather Prods. Co., Inc. v. Shoe World, Inc.*, 806 F.2d 392, 393 (2d Cir. 1986) (prohibiting the unauthorized sale of goods that were lawfully produced); *Dallas Cowboys Cheerleaders, Inc.*, 604 F.2d at 204-205 ("public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement"). "In fact, cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are 'open and shut.'" *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Kun Fung USA Trading*, No. 07-CV-2568, 2007 U.S. Dist. LEXIS 57224, at * 17 (E.D.N.Y. Aug. 6, 2007).

Here, there is a clear case of the unauthorized sale of Pan Am's merchandise. Where an allegedly infringing product is not visibly different in any way from a trademarked product, the criteria for establishing confusion set forth in *Polaroid Corp.*, 287 F.2d at 495, is met. *See Gucci*

*Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003). Defendants are using the exact trademarks owned by Pan Am. Some of the products were manufactured for sale under license from Pan Am to Machine Project. Now that that license has been terminated, defendants are selling these products themselves without the right to do so. This unauthorized sale of Pan Am's merchandise is an "open and shut" case of consumer confusion. *See Koon Chung Hing Kee Soy & Sauce Factory*, 2007 U.S. Dist. LEXIS 57224, at *15. Therefore, because Pan Am's Marks are entitled to protection and Defendants' use of these marks is likely to cause confusion, Pan Am is entitled to the injunctive relief sought herein. *See Virgin Enters. Ltd.*, 335 F.3d at 146.

IV.   **PAN AM HAS SUFFERED AND CONTINUES TO SUFFER IRREPARABLE HARM**

As discussed above, because the marks merit protection and a significant number of consumers would be confused about the source of the goods, Pan Am has demonstrated the probability of irreparable harm. And even if defendants had once been authorized licensees of Pan Am, which they were not, Pan Am still would be entitled to preliminary injunctive relief as irreparable harm is presumed whenever a former licensee continues to use a trademark without the owner's consent. *See Church of Scientology Int'l*, 794 F.2d *supra* at 40-42, 44. Indeed, Courts have granted injunctions prohibiting the sale of goods purchased from formerly authorized manufacturers that were produced after the manufacturing agreement was terminated. *See Tanning Research Labs., Inc. v. Worldwide Imp. & Exp. Corp.*, 803 F. Supp. 606, 609 (E.D.N.Y. 1992) (granting a permanent injunction based on sale of goods purchased from former licensee where goods were produced after license terminated). Moreover, courts will also enjoin a manufacturer who produced goods from selling those goods after the agreement is terminated. *See El Greco Leather Products Co., Inc.*, 806 F.2d at 393 (reversing denial of an injunction

prohibiting the sale of goods that were produced by manufacturer before trademark owner terminated contract with manufacturer); s*ee also By Design, PLC v. Ben Elias Indus., Corp.*, No. 98 Civ. 4588, 1998 U.S. Dist. LEXIS 22992, at *2-10 (S.D.N.Y. Oct. 2, 1998) (granting preliminary injunction against sale of goods purchased from manufacturer who was authorized to manufacture, but not sell the goods); *see also Italverde Trading Inc. v. Four Bills of Lading*, 485 F. Supp. 2d 187, 208-209 (E.D.N.Y. 2007) (noting that in the Second Circuit, the consumer confusion requirement is met where a defendant sells goods without authorization and no first sale has been authorized).

## CONCLUSION

In sum, Pan Am has demonstrated a likelihood of success on the merits and irreparable harm to its protected marks by showing that consumers will likely be confused by Vetements' and Chiu's actions. It is undisputable that the unauthorized introduction into the market of goods bearing marks *identical* to Pan Am's registered marks will create consumer confusion. Thus, Pan Am has met the requirements for a preliminary injunction and a temporary restraining order.

Dated: New York, NY
       June /7, 2008

Respectfully submitted,

WINSTON & STRAWN LLP

By: _____
Thomas J. Quigley
tquigley@winston.com
Luke A. Connelly
lconnelly@winston.com
200 Park Avenue
New York, New York 10166-4193
(212) 294-6700
(212) 294-4700 (facsimile)

*Attorneys for Pan American World Airways, Inc.*

15