UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PAN AMERICAN WORLD AIRWAYS, INC.,

                          Plaintiff,

      -against-                                     08 Civ. 5480 (RJH)

                                                            **MEMORANDUM OPINION
AND ORDER**

VETEMENTS, INC. and KINSER CHIU,

                          Defendants.

---

       This order addresses plaintiff's motion for summary judgment and defendants' motion to dismiss and to amend.[1]

I.       Motion for Summary Judgment

       Plaintiff seeks summary judgment on its claim that defendants infringed Pan Am's trademarks by selling Pan Am-branded products in March and April 2008, after Pan Am announced its termination of the Merchandise License Agreement ("MLA").

       To prove trademark infringement under the Lanham Act, a plaintiff must demonstrate (1) that it has a valid mark that is entitled to protection under the Act and (2) that the defendant's actions are likely to cause confusion as to the mark. *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1996). "But where the trademark holder has authorized another to use its mark, there can be no likelihood of

---

[1] Defendants disregarded the Court's individual rules of practice in briefing these motions. They submitted two overlength briefs of 60 pages without requesting leave to exceed the 25-page limit, and they did not file courtesy copies of their submissions. *See* Individual Practices, § 3.B-C. Apart from these violations, defendants also submitted their extensive exhibits (which were too large for electronic filing) in loose-leaf form, without any tabbing or binding. This conduct betrays a lack of professionalism. Defendants are directed to comply with the Court's rules in the future and to compile their submissions with consideration for those who must review them.

confusion and no violation of the Lanham Act if the alleged infringer uses the mark as authorized." *Segal v. Geisha NYC LLC*, 517 F.3d 501, 506 (7th Cir. 2008). Thus, to succeed on a trademark infringement claim against a former licensee, the plaintiff must prove that it properly terminated the licensee's authority to use the marks. *See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1308 (11th Cir. 1998) ("[T]he Lanham Act's requirement that a franchisor demonstrate that *unauthorized* trademark use occurred to prevail on the merits of a trademark infringement claim against a franchisee necessitates some type of showing [at the preliminary injunction stage] that the franchisor properly terminated the contract purporting to authorize the trademarks' use, thus resulting in the *unauthorized* use of trademarks by the former franchisee.") (emphasis in original); *Jordan v. Can You Imagine*, 485 F. Supp. 2d 493, 506 (S.D.N.Y. 2007) (denying licensor's motion for summary judgment on infringement claims where fact issues existed as to validity of license termination); *see also Krispy Kreme Doughnut Corp. v. Satellite Donuts, LLC*, 10 Civ. 4272 (LAK) (S.D.N.Y. July 21, 2010) (analyzing propriety of trademark owner's termination of license agreement before granting preliminary injunction for infringement). Otherwise, the licensee's use of the marks was not "unauthorized" within the meaning of the statute, and the infringement claim fails. *Id.*[2]

Here, factual disputes make summary judgment inappropriate. The MLA granted Machine Project, Inc. ("MPI") authority to use the Pan Am marks from January 1, 2007 through December 31, 2011. (Def. Ex. T.) There exists a genuine issue of material fact

---

[2] Plaintiff argues in passing that "wrongful termination is no defense to an infringement claim for post-termination sales . . . ." (Pl. Reply at 10.) The cases it relies upon, however, concern licensees who themselves repudiated a license agreement and then sought to continue using the licensor's intellectual property. Those cases do not stand for the proposition that a licensee will be liable for infringement where it uses trademarks after the *licensor* wrongfully repudiates.

as to whether defendant Chiu was acting for MPI and within MPI's contractual authority to use the marks when he made the allegedly infringing sales. Chiu claims he is President of MPI and owns one-half of its stock. (Def. 56.1 ¶¶ 66-67.) Numerous documents in the record support these assertions. (Def. Ex. L (MPI account-opening documents listing Chiu as "President" and Lucas as "Secretary" of the corporation); Def. Ex. T (MLA, bearing signatures of both Chiu and Lucas for MPI); Def Ex. K (lease agreement, signed by both Chiu and Lucas for MPI); Def Ex. M (Contract Amendment to original MLA, signed by both Chiu and Lucas for MPI); Def Ex. Z (Lucas proposal to Pan Am indicating that Chiu owned half of MPI); Def Ex. CC (same); Def Ex. II (same); Def. Ex. JJ (same).) The only opposing evidence plaintiff identifies is a declaration from its General Counsel, Culliford, stating his belief that Chiu's partner Lucas is the sole owner of MPI and that Lucas and his wife are the corporation's only officers and directors. (Pl. Br. at 20; Culliford Decl. ¶ 22.) But plaintiff does not submit any corporate documentation to corroborate Culliford's understanding. Moreover, at one point Culliford questioned Lucas's representation that Chiu had no power to act for MPI, (Def. Ex. VV), and plaintiff points to no evidence showing how and when Culliford overcame his doubts. For their part, defendants offer what appears to be an incomplete set of MPI's corporate documents. (Def. Ex. J.) The documents indicate that (1) Lucas was the sole shareholder; and (2) Lucas and his wife were the sole officers and directors. (Def. Ex. J.) Chiu states in his declaration that Lucas falsified these documents—they existed as blank forms in Chiu's office until Lucas removed them in January 2008, filled them out to his advantage, and then fraudulently backdated them to make it appear they had been completed within one week of the corporation's formation. (Chiu Decl. ¶ 2;

Def. Ex. J.)  The documents lend some support to this accusation—the notice of the shareholders' meeting and the meeting minutes bear inconsistent dates—as do Lucas's own acknowledgements of Chiu's stake in MPI.  (Def Ex. L; Def Ex. Z; Def Ex. CC; Def Ex. II; Def. Ex. JJ.)  On this record, a triable issue of fact exists as to whether Chiu had authority to act for MPI when he made the March and April 2008 sales of which Pan Am complains.

There are also factual disputes about whether Pan Am properly terminated MPI's rights to use the marks under the MLA.  To identify one such issue, the MLA contains a 30-day cure provision: "This Agreement may be terminated by either party upon thirty (30) days written notice to the other party in the event of a breach of a material provision of this Agreement by the other party, provided that, during the thirty (30) days period, the breaching party fails to cure such breach."  (Def. Ex. T § 4.D.)  When Chiu learned of Pan Am's termination letter, he sought to invoke this provision by contacting Pan Am through counsel and announcing his intent to cure MPI's breaches.  (Def. Ex. OO.)  But Pan Am rebuffed his efforts.  Culliford informed Chiu's counsel that although Pan Am appreciated Chiu's "interest in the success of Pan Am's branding program," he did not believe Chiu had authority to act for MPI and would not allow him any opportunity to cure.  (Def. Ex. PP.)  If Chiu was part-owner and President of MPI, as certain evidence suggests, Pan Am's refusal to allow him to cure MPI's defaults likely violated the contract.[3]

---

[3] Plaintiff contends MPI did not have a contractual right to cure its breach of the minimum performance requirement.  The contract, however, is at best ambiguous as to whether the cure provision applies to such breaches.  Section 4.B(ii) lists Pan Am's remedies for a breach of the minimum performance requirement: Pan Am could either (1) collect the royalties that would have been due had MPI met the requirement; or (2) terminate the agreement upon 30 days written notice.  This particular provision does not mention a right to cure, but neither does it describe Pan Am's termination right as "absolute," as plaintiff contends.  Two paragraphs later, in § 4.D, the freestanding cure provision appears, which purports to cover any breach of a

Moreover, Pan Am's primary justification for terminating the MLA is that MPI failed to meet the contract's minimum performance requirement. Some record evidence indicates, however, that Pan Am's own failure to provide MPI with exclusive rights to use the trademarks in Japan (to which MPI was entitled under the contract) caused this breach.[4] (*E.g.*, Def Ex. EE, 12/28/07 email from Lucas to Pan Am ("[N]ot being allowed to enter the Japanese market has damaged sales significantly and curtailed sales by at least one third.").) Given these factual disputes, the Court cannot find as a matter of law that Pan Am properly relied on the minimum performance requirement to terminate the contract.

\*   \*   \*

Because there are genuine issues of material fact about whether Pan Am validly terminated MPI's authority to use the marks and whether Chiu was acting for MPI when he made the allegedly infringing sales, plaintiff's motion for summary judgment is denied. *See McDonald's Corp.*, 147 F.3d at 1308; *Jordan*, 485 F. Supp. 2d at 506.

II.   Defendants' Motion to Dismiss and to Amend

Defendants move to dismiss the complaint on the ground that MPI and Lucas are indispensable parties who cannot be joined; in the alternative, defendants move to compel

---

"material provision." (Def. Ex. T.) The most natural reading of the contract, in the Court's view, is that a breach of the minimum performance requirement constitutes a "material breach" and therefore gives rise to a right to cure. But in any event, because the contract is at least ambiguous on the point, plaintiff has not shown as a matter of law that it validly terminated the agreement.

[4] Pan Am notes that the MLA made MPI's right to exclusivity "subject to rights in the Trademarks granted prior to the effective date by [Pan Am]," (Def. Ex. T at 4), and relies on this language to argue that its failure to provide MPI with exclusive rights in Japan did not breach the agreement. The record, however, does not clarify whether the lack of exclusivity in Japan resulted from rights that Pan Am had previously granted to another party, or whether Pan Am had simply allowed its trademarks in Japan to lapse (in which case it was in breach of the agreement).

joinder of Lucas and MPI as "necessary" parties.  Defendants also seek leave to amend their Answer to add counterclaims.

        A.      Motion to Dismiss

Federal Rule of Civil Procedure 19 imposes two basic requirements.  First, it requires joinder of any absent party that is "necessary" to the litigation.  Fed. R. Civ. Proc. 19(a)(1); *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724-25 (2d Cir. 2000).  Second, if an absent party is necessary but cannot be joined for practical or jurisdictional reasons, the Rule requires dismissal if the absent party is "indispensable" to the litigation.  Fed. R. Civ. Proc. 19(b); *Kearney*, 212 F.3d at 724-25.

Here, both MPI and Lucas are too closely intertwined in the issues raised by Pan Am's claims for the case to move forward without them.  Failure to require their joinder here would create potential for entirely duplicative litigation in other forums.  With regard to MPI, it is necessary under Rule 19(a)(1) because it is a party to the contract at issue in this case.  *See Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369, 387 (S.D.N.Y. 2000).  Because Pan Am's claim requires proof that it validly terminated the MLA (unless Pan Am can prove Chui did not have authority to act for MPI), any relief the Court might grant on that claim would be "hollow" without MPI in the case, since MPI would remain free to raise the same contractual issue in a different court.  *Global Discount Travel Services, LCC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 708 (S.D.N.Y. 1997) (a judgment is hollow under Rule 19(a)(1) if it would permit "repeated lawsuits on the same essential subject matter."); *Hooker Chemicals & Plastics Corp. v. Diamond Shamrock Corp.*, 520 F. Supp. 204, 206 (S.D.N.Y. 1981).  Therefore, MPI must

be joined as a party.[5]  *Ryan*, 107 F. Supp. 2d at 387.  Lucas is a necessary party for the same reasons—the outcome of the case depends (at least in part) on whether his claim to full ownership in MPI is valid or not.  Rather than leave his claim to be litigated redundantly elsewhere, the Court finds that Lucas must be joined as a party here.  *See* Fed. R. Civ. Proc. 19(a); *Global Discount Travel Services, LCC*, 960 F. Supp. at 708.

As for the second element of Rule 19, defendants have not made any showing that joinder of MPI and Lucas would not be feasible.  Accordingly, though the Court finds these parties must be joined, defendants' motion to dismiss is denied.  *See* Fed. R. Civ. Proc. 19(b).

### B.   Motion to Amend

Defendants move to amend their Answer to state counterclaims against Pan Am for breach of contract and various torts, including fraud and breach of fiduciary duty, and also to state tort claims against Lucas.  Pan Am opposes this motion on two grounds: (1) inexcusable delay; and (2) futility.

#### 1.   Inexcusable Delay

Leave to amend must be granted "freely . . . when justice so requires."  Fed. R. Civ. Proc. 15(a)(2).  In some circumstances, Courts deny leave where a party delays inexcusably in seeking to amend, but only if the delay also causes prejudice to the opposing party.  *Touchtunes Music Corp. v. Rowe Intern. Corp.*, 07 Civ. 11450 (RWS), 2010 WL 1904326, at *2 (S.D.N.Y. 2010); *see MacDraw, Inc. v. CIT Group Equip.*

---

[5] Plaintiff argues that the MLA's Massachusetts forum selection clause would bar MPI from asserting its contract claim here.  But plaintiff has twice waived its rights under the clause: first, by initiating this action, which requires a showing that the contract was validly terminated; and second, by attempting to remove the New York state court action (in which Chiu asserted a contract claim on MPI's behalf) to this Court.  *See Licensed Practical Nurses v. Ulysses Cruises, Inc.*, 131 F. Supp. 2d 393, 410 (S.D.N.Y. 2000) ("[A] party with a contractual right to block litigation in a particular forum can waive any rights the contract confers on it.").  The forum selection clause therefore does not bar a contract claim by MPI.

*Financing, Inc.*, 157 F.3d 956, 962 (2d Cir. 1998). Here, the Court agrees with Pan Am that defendants have not offered any coherent justification for their delay in seeking to add counterclaims. Defendants filed their original Answer on July 17, 2008, without stating any counterclaims. Ten months later, on May 18, 2009, after the bulk of discovery in the case had been taken—everything but two depositions—defendants wrote a letter informing plaintiff and the Court that it intended to move to file counterclaims. A deliberate strategy choice caused the delay: in May 2008, before Pan Am even filed this action, Chiu and MPI (with Chiu acting for it) filed a case in New York Supreme Court asserting claims against Pan Am and Lucas under essentially the same contract and tort theories that defendants now assert in their proposed amended answer. (Sofio 11/20/2009 Decl. Ex. O.) The New York court dismissed that case in November 2009 on the grounds that (1) the MLA's forum selection clause designated Massachusetts as the proper forum; and (2) Chiu, as an individual, lacked standing for the breach of contract claim because he was not a party to the MLA. (*Id.* at Ex. Q.) Now, having failed in his efforts to state his tort and contract claims in a different forum, Chiu seeks to assert them here, after the close of discovery. Normally, this intentional delay would prejudice the opposing party and warrant denial of leave to amend.

That Lucas and MPI still need to be joined as necessary parties to the action, however, changes the analysis. Discovery has closed, but joinder of these parties will inevitably require that it be reopened. The Court therefore finds unpersuasive Pan Am's argument that allowing the counterclaims would cause it significant prejudice by delaying resolution of the case and requiring additional discovery, because those consequences will arise from the required joinder alone. Thus, though defendants' delay

is enervating, the Court finds that it alone is not a proper basis for denying leave to amend.  *See* Fed. R. Civ. Proc. 15; *Touchtunes Music Corp.*, 2010 WL 1904326 at *2 ("[D]elay and additional discovery do not necessarily require denial of the motion to amend.").

## 2. Futility

Pan Am argues leave to amend should be denied because the proposed amendments do not state claims upon which relief can be granted.  The Court agrees.

"Where a party opposes leave to amend on 'futility' grounds, the appropriate legal standard is whether the proposed [amendment] fails to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  *Ratcliffe v. Pradera Realty Co.*, 2007 WL 3084977, at *4 (S.D.N.Y. Oct. 19, 2007); *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007); *Segatt v. GSI Holding Corp.*, 2008 WL 4865033, at *3 (S.D.N.Y. Nov. 3, 2008) (If the party seeking leave to amend "'is unable to demonstrate that he would be able to amend his [pleading] in a manner which would survive dismissal, opportunity to replead is rightfully denied.'") (quoting *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999)).

Defendants' Proposed Amended Answer ("PAA") asserts seven counterclaims: (1) breach of contract; (2) breach of fiduciary duty; (3) aiding and abetting breach of fiduciary duty; (4) tortious interference with contract; (5) aiding and abetting fraud; (6) fraud; and (7) negligent misrepresentation.  These claims suffer from two general defects.  First, some of the claims belong to MPI, the entity that actually entered into the licensing agreement with Pan Am.  Though Chiu may be able to cause MPI to sue (if he is, as he contends, half-owner and president of the company), he cannot state claims on MPI's

behalf in his individual capacity. Second, the counterclaims are stated against Pan Am instead of Lucas. While defendants might be able to state plausible claims against Lucas, who worked with them in merchandising the branded goods and possibly owed them fiduciary duties as a joint venturer, the claims against Pan Am are quite tenuous, because Pan Am stood on the other side of the merchandising deal and did not enter any direct agreements with Chiu or Vetements that would give rise to special duties of care. Thus, though the Court considers the merits of each of the seven claims individually, the general point is this: Chiu and Vetements may well have claims against Lucas, and MPI may well have claims against Lucas and Pan Am, but Chiu and Vetements do not have claims against Pan Am.

       a.   <u>Breach of Contract</u>

The PAA asserts a claim against Pan Am for breach of the MLA, but neither Chiu nor Vetements was actually a party to the MLA. Therefore, defendants have no standing to sue on the contract, and this claim is futile. *See Faggionato v. Lerner*, 500 F. Supp. 2d 237, 249 (S.D.N.Y. 2007). This ruling does not, of course, preclude *MPI* (the actual party to the MLA) from bringing a breach of contract claim.

       b.   <u>Breach of Fiduciary Duty</u>

The PAA asserts a claim for breach of fiduciary duty on the theory that Pan Am owed defendants fiduciary duties arising out of a joint venture between Pan Am, defendants, and Lucas. The PAA, however, does not adequately plead the existence of such a joint venture because it does not allege that Pan Am, defendants, and Lucas agreed to share losses arising from the merchandising venture. *Dinaco, Inc. v. Time Warner,*

10

*Inc.*, 346 F.3d 64, 67-68 (2d Cir. 2003).  Because the PAA does not allege that Pan Am owed fiduciary duties for any other reason, this claim is futile.  *Id.*

                                                     c.          Aiding and Abetting Breach of Fiduciary Duty

Next, defendants contend that even if Pan Am did not owe any fiduciary duties to them directly, it at least aided and abetted Lucas in breaching his duties to defendants.

To succeed on a claim for aiding and abetting breach of fiduciary duty, a plaintiff must prove, *inter alia*, that the defendant "knowingly induced or participated in" another person's breach.  *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 466 (S.D.N.Y. 2009).  Like the "substantial assistance" element in a claim for aiding and abetting fraud, this element of "knowing participation" is only satisfied if the defendant "affirmatively assists, helps conceal, or fails to act when required to do so, thereby enabling the breach to occur."  *In re Sharp Intern. Corp.*, 403 F.3d 43, 51 (2d Cir. 2005).

The PAA alleges that Lucas's fiduciary duties to defendants arose from one of two sources: (1) his status as a co-owner with Chiu of MPI, a closely-held corporation; or, failing that, (2) his status as a "joint venturer[] with [defendants] in connection with the joint venture to develop and sell Pan Am branded products."  (PAA ¶ 110.)  Under the first theory, defendants have no claim: if Lucas breached duties arising from his position at MPI, then the claim for that breach runs to MPI, not to Chiu or Vetements. *See, e.g., Davis v. Magavern*, 237 A.D.2d 902, 902 (4th Dep't 1997).   As for the second theory, it fails because the allegations of knowing participation against Pan Am concern breaches of Lucas's duties to MPI, not duties to Chiu or Vetements as independent "co-venturers" in the merchandising scheme.  Defendants argue, for example, that Pan Am assisted Lucas's breach by wrongfully terminating the MLA and by refusing to allow

11

MPI an opportunity to cure.  (Def. Mem. 45-46.)  Those actions harmed MPI, not defendants.  The only acts by Pan Am that might be said to have harmed Chiu and Vetements directly, as Lucas's "co-venturers," are (1) its negotiations with Lucas about a new joint merchandising venture to replace the parties' arrangement under the MLA; and (2) its decision to hire Lucas and his wife after it terminated the MLA.  But a co-venturer does not breach fiduciary duties simply by making plans to compete with the joint-venture in the future.  *See Gibbs v. Breed, Abbott & Morgan*, 271 A.D.2d 180, 193 (1st Dep't 2000).  Thus, because Lucas did not commit breach by making such plans, Pan Am did not aid and abet breach by participating in the planning.  *See Constantine Assocs. v. Kapetas*, 2007 WL 429732, at *3 (N.Y. Sup. Ct. Dec. 6, 2007).

In sum, the PAA does not allege that Pan Am assisted Lucas in breaching any duties he owed to defendants (as opposed to obligations he owed to MPI).  This claim is futile.

                d.        <u>Tortious Interference with Contractual Relations</u>

The PAA asserts that Pan Am tortiously interfered with a contract between defendants and Lucas "to develop, manufacture and sell Pan Am-branded products." (PAA ¶ 115.)  This claim fails because the PAA does not in fact identify any "valid and enforceable" agreement between defendants and Lucas, much less a specific provision of any such agreement that Pan Am induced Lucas to breach.  *See Balakrishnan v. Kusel*, 08 Civ. 1440 (BMC), 2009 WL 1291755, at *11 (E.D.N.Y. May 08, 2009).  ("[I]n a tortious interference with contract action . . . the plaintiff must identify a specific contractual term that was breached.") (quotations omitted); *Millar v. Ojima*, 354 F. Supp. 2d 220, 230 (E.D.N.Y. 2005) (same).  While defendants may be able to allege that they and Lucas

entered a joint venture, which "need not be evidenced by a written agreement," *In re Cohen*, 422 B.R. 350, 377 n.10 (E.D.N.Y. 2010), they have not alleged the existence of an enforceable contract.  Accordingly, the tortious interference claim is futile.

e. Fraud

Defendants' fraud claim is premised on the theory that Pan Am induced them to enter a joint venture by falsely representing that the MLA would confer exclusive rights to use the trademarks in Japan.  This claim fails because the PAA does not actually allege that defendants entered a joint venture with Pan Am.  Though MPI might have a claim that Pan Am fraudulently induced it to enter the contract through this misrepresentation (assuming MPI can adequately plead scienter, which seems far from certain), defendants do not have any independent claims based on the misrepresentation, because the allegations do not show that Pan Am, in negotiating a contract with *MPI*, intentionally sought to induce *Chiu and Vetements* to do anything.  *See DNJ Logistic Group, Inc. v. DHL Exp. (USA), Inc.*, 08 Civ. 2789 (DGT), 2010 WL 2976493, at *5 (E.D.N.Y. 2010) (fraud under New York law requires proof of "intent to induce reliance" and "justifiable reliance *by the plaintiff*.") (emphasis added).  Accordingly, the fraud claim is futile.

f. Aiding and Abetting Fraud

Defendants contend that Lucas defrauded them by "concealing his conspiratorial dealings with Pan Am."  (Def Mem. at 48.)  In other words, defendants believe Lucas committed fraud by failing to inform them that he was considering terminating the MLA in favor of a different arrangement with Pan Am.  Defendants contend that Pan Am, in turn, furthered this fraud by "also failing to disclose to Chiu and/or Vetements the nature of its dealings with Lucas."  (*Id*.)  This theory does not make out a viable claim for aiding

13

and abetting fraud against Pan Am, because it fails to allege that Pan Am did anything affirmative to substantially assist Lucas in defrauding defendants.  Pan Am's omissions—its failures to disclose its discussions with Lucas to defendants—do not constitute "substantial assistance" because Pan Am did not owe defendants any independent duty of disclosure.  *In re Agape Litig.*, 681 F. Supp. 2d 352, 365 (E.D.N.Y. 2010) ("When a defendant has no [affirmative] duty [to act], their failure to act may not serve as the basis for claiming that the defendant provided substantial assistance."); *Musalli Factory For Gold & Jewelry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 25 (S.D.N.Y. 2009) ("[O]missions [] do not rise to the level of substantial assistance [if] there was no fiduciary relationship between [the parties].").  Thus, even assuming defendants have a viable fraud claim against Lucas, their proposed aiding and abetting claim against Pan Am is futile.

                g.      Negligent Misrepresentation

Negligent misrepresentation under New York law requires proof that the defendant owed the plaintiff a "duty of care" arising from a "special position of confidence and trust."  *Five Star Dev. Resort Communities, LLC v. iStar RC Paradise Valley LLC*, 09 Civ. 2085 (LTS), 2010 WL 2697137, at *2 (S.D.N.Y. July 06, 2010).  Here, defendants do not allege this element: the PAA does not show the existence of a joint venture, and defendants point to no other source for the required duty.  The negligent misrepresentation claim is therefore futile.  *Id*.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment [**24**] is denied. Defendants' multi-part motion [**32**] is granted in part and denied in part. The Court finds that MPI and Lucas are necessary parties and orders plaintiff to join them to this action within 14 days. All other relief sought in defendants' motion is denied. [*Do you want to set a conference?*]

SO ORDERED.

Dated: New York, New York
       Sept. 16, 2010

_____
Richard J. Holwell
United States District Judge

15